**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND *et al.*,<br>*Plaintiffs*,<br>v.<br>KEL-TECH CONSTRUCTION, INC.,<br>*Defendant*. | Civil Action No. 17-1349 (TJK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Bricklayers & Trowel Trades International Pension Fund and International Masonry Institute (together, the "Plans") are multiemployer employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829. They have filed suit against Defendant Kel-Tech Construction, Inc. ("Kel-Tech") for failure to pay contributions to the Plans in violation of certain agreements and ERISA. ECF No. 1 ("Compl."). To date, Kel-Tech has failed to answer or otherwise defend this action. The Plans filed a Motion for Entry of Judgment by Default (the "First Motion"), ECF No. 9, asking the Court to enter judgment in the amount of $59,600.82[1] against Kel-Tech and to order certain equitable relief. *See* ECF No. 9; *see also* ECF No. 9-1 ("Pls.' Br."); ECF No. 9-2 ("Pls.' First Summary"); ECF No. 9-3 ("Pls.' App'x"). Seven months later, the Plans filed a Supplemental Motion for Entry of Judgment by Default (the "Second Motion"), ECF No. 10,

[1] The Court notes that there appears to be a typographical error in the First Motion itself, which erroneously describes the amount requested as $59,800.62. However, the supporting papers make clear that the amount requested was in fact $59,600.82.

increasing the amount of the requested judgment to $77,179.10. ECF No. 10; *see also* ECF No. 10-1 ("Pls.' Second Decl."); ECF No. 10-2 ("Pls.' Second Summary").

The Court will deny the First Motion as moot, given that it has been effectively superseded by the Second Motion.[2] As explained below, the Court concludes that the record supports granting the Second Motion only in part. The Court will give the Plans an opportunity to address the deficiencies identified in this Opinion by August 31, 2018. If the Plans choose not to do so, the Court will enter a judgment consistent with this Opinion.

## I. Factual and Procedural Background

The Plans filed their complaint on July 7, 2017, Compl., and served Kel-Tech on July 24, 2017, *see* ECF No. 3. When Kel-Tech failed to respond within 21 days as required by Federal Rule of Civil Procedure 12(a)(1)(A)(i), the Clerk entered default against Kel-Tech at the Plans' request. ECF No. 5. The Plans then filed the instant motions for default judgment.

The Plans provide benefits to employees pursuant to agreements negotiated between local unions and employers. Pls.' App'x at 3. As described in the Plans' complaint, Kel-Tech has entered into collective bargaining agreements ("CBAs") with a local union, International Union of Bricklayers and Allied Craftworkers Local Union No. 1, New York ("Local 1"). Compl. ¶ 7. The Plans' declarations, but not their complaint, also reference a CBA between Kel-Tech and another local union, International Union of Bricklayers and Allied Craftworkers Local Union No. 84, New York ("Local 84"). Pls.' App'x at 3. The CBAs obligate Kel-Tech to make monthly reports to the Plans of the hours worked by covered employees, and to pay monthly contributions to the Plans. *Id.*

---

[2] While the Second Motion does not expressly incorporate the papers filed with the First Motion by reference, the Court deems the Second Motion to do so implicitly.

The Plans are governed by trust agreements. Compl. ¶¶ 1-2. Although they never allege as much, the Plans appear to assume that, by virtue of the CBAs, Kel-Tech became bound by the terms of the trust agreements as well. *See id.* ¶¶ 10-11. The trust agreements provide that, if Kel-Tech fails to make the required contributions, the Plans may require Kel-Tech to pay: (i) the amount of unpaid contributions; (ii) 15% interest on delinquent contributions; (iii) an additional award equal to the greater of 15% interest on delinquent contributions or liquidated damages of 20% of the amount of the delinquent contributions; and (iv) attorney's fees and costs incurred in pursuing the delinquency. Pl.'s App'x at 3, 16-17. The Plans' "General Collection Procedures" contain similar provisions, although the Plans never explain how the Procedures are binding on Kel-Tech. *See* Compl. ¶¶ 12-13; Pls.' App'x at 9-12. The Procedures explain that the contributions and reports required by the CBAs become due on the 15th day of each month. *See* Pls.' App'x at 9.

The Plans' complaint and motion papers refer to different "cover groups" within each local union. *See, e.g.*, Compl. ¶¶ 16-17. While the Plans do not explain exactly what these groups are, the Court infers that each consists of a sub-group of local union employees. The Plans have identified four cover groups for which Kel-Tech allegedly owes contributions: three within Local 1 (cover group 1 ("1-NY-1"), cover group 64 ("1-NY-64"), and cover group 66 ("1-NY-66")) and one within Local 84 (cover group 19 ("84-NY-19")). *See* Pls.' Second Summary. Cover group 1-NY-64 was not mentioned in the Plans' complaint or the First Motion; rather, the Plans first sought damages associated with group 1-NY-64 in the Second Motion.

In their complaint, the Plans bring three counts against Kel-Tech. Count I seeks to recover required contributions to the Plans that Kel-Tech had not made as of the filing of the complaint, allegedly in violation of ERISA, the CBAs, the trust agreements, and the General

Collection Procedures. Compl. ¶¶ 15-21. Count II seeks to recover interest, liquidated damages and attorney's fees on contributions that Kel-Tech made late, but before the filing of the complaint, under the trust agreements and the General Collection Procedures. *Id.* ¶¶ 22-26. Count III seeks injunctive relief requiring Kel-Tech to make reports and pay contributions in a timely manner going forward. *Id.* ¶¶ 27-31. The Plans also seek "contributions, interest, liquidated damages, and reasonable attorneys' fees and costs that may accrue and/or are found to be due and owing to the Plaintiffs subsequent to the filing of this Complaint, during the pendency of this action, and up to the date of judgment." *Id.* at 10.

In support of the First Motion, the Plans submitted a declaration detailing their damages for each cover group (excluding 1-NY-64), as well as a document summarizing the amounts set forth in the declaration. *See* Pls.' App'x at 2-7; Pls.' First Summary. With their Second Motion, the Plans submitted a revised declaration and summary with new damages amounts. *See* Pls.' Second Decl.; Pls.' Second Summary. The revisions reflect damages for contributions due to cover group 1-NY-64, additional accrued interest, as well as the Plans' allegation that Kel-Tech has, since the filing of the First Motion, paid some contributions it owed but failed to make other contributions as they came due. Table 1, below, summarizes the damages requested in the First Motion by cover group and category; Table 2 summarizes the damages requested in the Second Motion in the same format.

In both the First and Second Motions, the Plans also request an award of $3,599.00 in attorney's fees and $590.00 in costs. Pls.' First Summary; Pls.' Second Summary. Their counsel has provided an affidavit supporting this award, along with a spreadsheet detailing the legal work underlying the fee request. *See* Pls.' App'x at 18-26.

*Table 1: Summary of Damages Requested in First Motion*

| | | Local 1 | | | Local 84 |
|---|---|---|---|---|---|
| | | **1-NY-1** | **1-NY-64** | **1-NY-66** | **84-NY-19** |
| **Count I** | Unpaid Contributions | $13,485.04 | — | $14,188.21 | $1,806.12 |
| | Interest on Unpaid Contributions | $287.33 | — | $330.70 | $2,264.40 |
| | Liquidated Damages or Additional Interest on Unpaid Contributions | $2,697.02 | — | $2,837.66 | $2,264.40 |
| **Count II** | Interest on Late Contributions | $1,524.51 | — | $1,125.32 | — |
| | Liquidated Damages or Additional Interest on Late Contributions | $7,693.95 | — | $4,907.16 | — |

*Table 2: Summary of Damages Requested in Second Motion*

| | | Local 1 | | | Local 84 |
|---|---|---|---|---|---|
| | | **1-NY-1** | **1-NY-64** | **1-NY-66** | **84-NY-19** |
| **Count I** | Unpaid Contributions | $11,460.80 | $1,076.04 | $16,211.97 | $1,806.12 |
| | Interest on Unpaid Contributions | $372.07 | $41.69 | $521.29 | $2,400.95 |
| | Liquidated Damages or Additional Interest on Unpaid Contributions | $2,292.16 | $215.21 | $3,242.39 | $2,400.95 |
| **Count II** | Interest on Late Contributions | $2,938.27 | $21.91 | $2,735.94 | — |
| | Liquidated Damages or Additional Interest on Late Contributions | $14,569.90 | $75.26 | $10,607.48 | — |

## II. Legal Standard

"A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics." *Boland v. Elite Terrazzo Flooring,*

*Inc.*, 763 F. Supp. 2d 64, 66-67 (D.D.C. 2011) (citing *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)). However, "[b]ecause courts strongly favor resolution of disputes on their merits," a default judgment "usually is available 'only when the adversary process has been halted because of an essentially unresponsive party.'" *Id.* at 67 (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *SEC v. E-Smart Techs., Inc.*, 139 F. Supp. 3d 170, 176-77 (D.D.C. 2015) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)). "Before entering judgment against an absent defendant, . . . 'a court should satisfy itself that it has personal jurisdiction' over that defendant." *Trudel v. Suntrust Bank*, 302 F. Supp. 3d 140, 142 (D.D.C. 2018) (quoting *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)).

Under Federal Rule of Civil Procedure 55, there is a "two-step procedure" for obtaining a default judgment. *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 102 (D.D.C. 2015). First, after a defendant "has failed to plead or otherwise defend," the plaintiff may request that the Clerk of the Court enter default against that defendant. Fed. R. Civ. P. 55(a). Second, after default is entered, the plaintiff may move for a default judgment. Fed. R. Civ. P. 55(b)(2). "By providing for a two-step process, Rule 55 allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment." *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass LLC*, 635 F. Supp. 2d 21, 23 n.1 (D.D.C. 2009); *see* Fed. R. Civ. P. 55(c).

An entry of default "establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67 (collecting cases). However, this "does not automatically establish liability in the amount claimed by the plaintiff."

*Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013). Rather, the Court "is required to make an independent determination of the sum to be awarded," *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), and is afforded "considerable latitude" in making its determination, *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67. In his motion for default judgment, the plaintiff must prove to the Court his requested damages "to a reasonable certainty." *Id.* at 68. In support, the plaintiff may offer "detailed affidavits or documentary evidence" on which the Court may rely, and is "entitled to all reasonable inferences from the evidence [he] offer[s]." *Amrine Drywall*, 239 F. Supp. 2d at 30. The Court may conduct a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), but is not required to do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment," *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 67 (alterations in original) (internal quotation marks omitted).

## III. Analysis

As explained below, the Court determines that it may exercise personal jurisdiction over Kel-Tech. The Court then concludes that the facts alleged in the Plans' complaint establish Kel-Tech's liability with respect to Count I, but not Count II. In addition, the Plans have not established Kel-Tech's liability for claims based on Kel-Tech's purported obligations to Local 84. With respect to damages, the Plans have not established interest and liquidated damages to a reasonable certainty. Nor have the Plans demonstrated their entitlement to a permanent injunction, as requested in Count III. Accordingly, the Court concludes that the record supports a judgment awarding only some of the damages that the Plans have requested.

### A. Personal Jurisdiction

In most cases, a district court may exercise personal jurisdiction only to the extent that a state court of general jurisdiction in that district could. *See* Fed. R. Civ. P. 4(k)(1)(A); *Walden v.*

*Fiore*, 134 S. Ct. 1115, 1121 (2014). Thus, jurisdiction must typically be proper under the state's long-arm statute and the Fourteenth Amendment, which requires "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). But where Congress has provided for nationwide service of process, it is the federal government, not the state, that is the touchpoint for the jurisdictional analysis. *See* Fed. R. Civ. P. 4(k)(1)(C); *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004). In those cases, jurisdiction requires compliance with a federal service-of-process statute and, under the Fifth Amendment, sufficient "national contacts" with the United States. *See Bilzerian*, 378 F.3d at 1106 n.8; *Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41, 43-48 (D.D.C. 2011).

Section 502(e)(2) of ERISA contains the following jurisdictional provision:

> Where an action under [29 U.S.C. §§ 1001 to 1191c] is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). This provision authorizes nationwide service of process. *See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 75 (D.D.C. 2017). Here, the Plans have satisfied the statute. They have brought suit in this District, where they are administered. Compl. ¶¶ 1-2. In addition, they have served Kel-Tech in the district where it resides, the Eastern District of New York. The Plans have submitted a process server's affidavit stating that Gordon Holder, a general agent of Kel-Tech, was personally served with the complaint at Kel-Tech's headquarters in Far Rockaway,

Queens, on July 24, 2017. *See* ECF No. 3-1.[3] This constitutes valid service of process upon a corporation or unincorporated association. *See* Fed. R. Civ. P. 4(h)(1)(B).[4]

Exercising personal jurisdiction over Kel-Tech is also consistent with the Fifth Amendment. Given that the complaint concerns Kel-Tech's obligations under CBAs entered into in the United States (presumably, in its home state of New York), there are obviously sufficient contacts with the United States to satisfy the Fifth Amendment. *See* Compl. ¶¶ 3, 7.[5] Therefore, the Court has personal jurisdiction over Kel-Tech.

**B. Liability**

Because default has been entered, Kel-Tech is liable for the well-pleaded allegations in the Plans' complaint. *See Amrine Drywall*, 239 F. Supp. 2d at 30. However, courts should not

[3] The Court notes that the Plans' counsel, in his own submission, erroneously states that process was served on Kel-Tech's CEO, Philip Kelleher. *See* ECF No. 4 ¶ 2. The Court assumes this was the result of a simple oversight.

[4] In their complaint, the Plans describe Kel-Tech as a corporation. Compl. ¶ 3. In the Second Motion, the Plans have changed the caption to indicate that Kel-Tech is in fact a limited liability company. *See* ECF No. 10. The Plans have not moved to amend the pleadings to correct Kel-Tech's name, *see* Fed. R. Civ. P. 15, or to add or drop parties, *see* Fed. R. Civ. P. 21. However, this distinction does not appear to affect the validity of service of process, because "[i]f the name used in the complaint leaves no doubt as to the defendant's identity, and service is otherwise sufficient, then service is proper regardless of the error." *Winston & Strawn LLP v. Law Firm of John Arthur Eaves*, 47 F. Supp. 3d 68, 75 (D.D.C. 2014).

[5] The Court notes decisions by a few courts of appeals holding that, notwithstanding the "national contacts" test, there may be rare circumstances in which exercising jurisdiction over a remote defendant might be so extremely unfair as to violate due process. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997); *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947-48 (11th Cir. 1997). Other courts have disagreed. *See, e.g.*, *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035-37 (7th Cir. 2000). The D.C. Circuit does not appear to have weighed in on this issue. *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 55 n.6 (D.C. Cir. 2017). Regardless, exercising jurisdiction over Kel-Tech in this case does not rise to the level of extreme unfairness, if for no other reason than that it agreed to make payments to ERISA plans administered in this District.

enter default judgment if the well-pleaded allegations do not state a claim. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 & n.23 (2d Cir. 2011) (collecting cases). The Court will therefore consider whether the factual allegations in the complaint make out causes of action against Kel-Tech under Counts I and II.[6]

**1. Count I (Unpaid Contributions)**

Section 515 of ERISA provides a federal cause of action to enforce an employer's obligation to contribute to a multiemployer plan:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, the Plans have alleged that Kel-Tech entered into CBAs with Local 1 that obligated it to report employees' hours and make contributions to the Plans. *See* Compl. ¶¶ 7-10. They also allege that Kel-Tech failed to make contributions to the Plans as required. *Id.* ¶¶ 16-17. Therefore, they have stated a claim under ERISA for unpaid contributions under the Local 1 CBAs, and because Kel-Tech has failed to appear, the Court will enter default judgment for the Plans on Count I as it relates to Local 1.

The Court notes that the complaint does not mention cover group 1-NY-64, even though the Plans now seek damages for 1-NY-64. The Court concludes that this does not affect its analysis on liability, because identifying the particular employees for whom contributions have not been paid (and, by extension, the cover groups they belong to) does not appear to be required to plead the claim.

[6] Count III, which requests injunctive relief, does not assert a separate cause of action. *See Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015). The Court will address the Plans' request for injunctive relief separately.

The Plans' well-pleaded allegations do not, however, make out a claim with respect to the Local 84, for two reasons. First, while the Plans reference cover group 84-NY-19 in their complaint, *see id.* ¶ 18, they never allege that Kel-Tech entered into a CBA or other agreement with Local 84, *see id.* ¶ 7. Section 515 provides a federal cause of action for breach of an employer's promise to make contributions to a multiemployer ERISA plan. *See Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S 539, 547-49 (1988). It thus requires the plaintiff to plead the existence of an agreement. *See Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Gudgel Yancey Roofing Inc.*, 225 F. Supp. 3d 1106, 1115 (N.D. Cal. 2016); *cf. He Depu v. Yahoo! Inc.*, 306 F. Supp. 3d 181, 193 (D.D.C. 2018) ("To claim a breach of contract in federal court[,] the complaint must identify the specific provision of the contract allegedly breached by the defendant." (alteration in original) (quoting *Kaar v. Wells Fargo Bank, N.A.*, No. 3:16-cv-1290 (WHA), 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016))). Because the Plans do not allege the existence of any agreement between Kel-Tech and Local 84, they have not alleged that Kel-Tech was "obligated . . . under the terms of a collectively bargained agreement" as required by Section 515. For the same reason, there is no well-pleaded claim under the CBA itself.

Second, the claims related to Local 84 appear to be time-barred. The statute of limitations is an affirmative defense that usually must be raised by the defendant. However, especially in atypical cases in which a defendant does not appear, "'courts have the discretion . . . to raise on their own initiative certain nonjurisdictional barriers to suit,' including statutes of limitations." *Maalouf v. Islamic Republic of Iran*, 306 F. Supp. 3d 203, 208 (D.D.C. 2018) (alteration in original) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 n.14 (2010)). "Consistent with these principles, a number of courts have found that they have

the discretion to raise the statute of limitations *sua sponte* and have dismissed time-barred claims when presented with a request for a default judgment." *De Santis v. City of New York*, No. 10-cv-3508 (JPO) (GWG), 2013 WL 3388455, at *5 (S.D.N.Y. July 8, 2013), *report and recommendation adopted*, 2014 WL 228659 (S.D.N.Y. Jan. 22, 2014). Moreover, even if courts granting default judgment can overlook statute-of-limitations issues on liability, they cannot do so on damages, as they must make an "independent determination of the sum to be awarded." *Amrine Drywall*, 239 F. Supp. 2d at 30. Thus, another court in this District has declined to award damages on default judgment to the extent that the plaintiff's claims arose outside the limitations period. *See Reyes v. Kimuell*, 270 F. Supp. 3d 30, 35 (D.D.C. 2017).

The Plans' claims related to Local 84 arose long before the applicable limitations period. While ERISA provides a statute of limitations for fiduciary claims, *see* 29 U.S.C. § 1113, it does not contain a statute of limitations for nonfiduciary claims, such as the delinquent-contribution claims at issue in this case, *see Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991). Accordingly, courts must "borrow the most closely analogous statute of limitations from the state in which the court sits," here the District of Columbia's three-year statute of limitations for breach of contract claims. *Id.* (citing D.C. Code § 12-301(7)). The claims related to Local 84 arose in 2009 and 2010—over seven years before the filing of this lawsuit, and over four years outside the limitations period. *See* Compl. ¶ 18. While there are doctrines (such as the discovery rule and equitable tolling) that could theoretically make these claims timely, the Plans have offered no such justification in their complaint or in their motion papers. Given the obvious and unaddressed statute-of-limitations issue in this case, the current record does not support liability (or an award of damages) with respect to the claims related to Local 84.

### 2. Count II (Late Contributions)

The current record does not support any default judgment for the Plans on Count II, which seeks interest, liquidated damages and fees for late (but paid) contributions, because Kel-Tech's liability is not supported by well-pleaded factual allegations in the complaint. Unlike Count I, which seeks to enforce Kel-Tech's obligations under the CBAs with Local 1 pursuant to ERISA, Count II is brought under the Plans' trust agreements and General Collection Procedures. *See* Compl. ¶¶ 12-14, 19, 24. In fact, Count II could not have been brought pursuant to ERISA because, as other circuits have held (and as the D.C. Circuit has suggested in dictum), ERISA provides for interest and liquidated damages only on contributions that are *unpaid*, not contributions that are made late but paid before suit is brought. *See* 29 U.S.C. § 1132(g)(2); *Holland v. Bibeau Constr. Co.*, 774 F.3d 8, 18 (D.C. Cir. 2014) (citing *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 289 (3d Cir. 2007)). Thus, the Court can find liability under this cause of action only if Kel-Tech was, in fact, bound to the terms of those documents.

The problem is that the Plans nowhere allege that Kel-Tech was bound by the trust agreements or General Collection Procedures. In a similar case recently before this Court, the plaintiff alleged (by attaching the relevant portions of the CBAs to its motion for a default judgment) that the defendant employer had entered into CBAs that incorporated the terms of an ERISA plan's trust agreement by reference. *See Fanning v. AMF Mech. Corp.*, No. 17-cv-1514 (TJK), 2018 WL 2389727, at *1 (D.D.C. May 24, 2018). Such an allegation (made in the complaint itself or as described above) would have been adequate to establish Kel-Tech's liability on Count II, but it is conspicuously absent from the record.

The Court acknowledges that there is authority holding that an employer that contributes to a multiemployer plan pursuant to a CBA is bound, as a matter of law, by the plan's trust

agreement, even if the CBA does not expressly incorporate the trust agreement by reference. *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1450-51 (11th Cir. 1991); *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1493-95 (9th Cir. 1990); *Graphic Arts Indus. Joint Pension Tr. v. Hatcher Press, Inc.*, No. 10-cv-1028 (ABJ) (AK), 2011 WL 5149124, at *2 (D.D.C. Oct. 28, 2011) (citing *Vertex*, 932 F.2d at 1451). While the D.C. Circuit has not weighed in on the matter, the Second Circuit (where Kel-Tech is headquartered) has distinguished these cases, holding that even if an employer might be deemed bound by key terms of the trust agreement that are necessary to the operation of the plan (such as the plan's right to audit employer records), the employer is not bound as a matter of law by *all* terms of the trust agreement, and in particular is not bound by a liquidated-damages provision that is not incorporated into the CBA. *Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38, 40-42 (2d Cir. 1996). The Court declines to weigh in on this issue at this point, because the Plans do not assert *any* legal or factual theory—either in their complaint or their motion papers—under which Kel-Tech is bound to the trust agreements or the General Collection Procedures.

In short, Count II depends on an allegation that Kel-Tech is bound to the interest-rate and liquidated-damages provisions in the trust agreements and General Collection Procedures. The Plans have not made any such allegation, and so the current record does not support entry of default judgment on Count II.

**C. Damages**

Having established Kel-Tech's liability with respect to Count I (insofar as it relates to Local 1), the Court must now "make an independent determination—by relying on affidavits, documentation, or an evidentiary hearing—of the sum to be awarded as damages." *Ventura*, 134

F. Supp. 3d at 104. A plaintiff "must prove these damages to a reasonable certainty." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68.

As limited by the Court's ruling on liability above, the damages and fees sought against Kel-Tech are as follows: (1) the total amount of unpaid contributions to cover groups 1-NY-1, 1-NY-64, and 1-NY-66, which date from November 2016 through February 2018; (2) interest on those unpaid contributions; (3) liquidated damages; and (4) attorney's fees and costs. *See* Compl. ¶¶ 16-21; Pls.' Second Decl.; Pls.' Second Summary. Upon review of the entire record and the applicable law, the Court concludes it is proper to grant the request insofar as it relates to unpaid contributions and attorney's fees, but not interest or liquidated damages.

In cases where "a court awards a default judgment against a defendant for contributions owed under a collective bargaining agreement," such as this one, Section 502(g)(2) of "ERISA provides that the court *must* award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; and (4) reasonable attorney's fees and costs of the action." *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 70 (D.D.C. 2002) (emphasis added) (footnotes omitted) (citing 29 U.S.C. § 1132(g)(2)). Interest "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]." 29 U.S.C. § 1132(g)(2). Liquidated damages consist of the greater of (i) a second award of interest, or (ii) "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the amount of unpaid contributions. *Id.* § 1132(g)(2)(C). Here, plan documents provide for an interest rate of 15% and liquidated damages of 20%. Compl. ¶¶ 12-13; Pls.' App'x at 16-17.

The complication in this case is that, as explained above, Kel-Tech is not alleged to have assented to the documents that contain the interest-rate and liquidated-damages clauses that the Plans seek to enforce, leaving unclear whether the Plans should receive the benefit of those

clauses or the statutory default provisions.[7] Moreover, the Plans have not calculated their damages using the statutory defaults. As a result, they have failed to show the amount of interest and liquidated damages due "to a reasonable certainty" on the current record. *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68.

Therefore, the Plans' damages will be limited to the amount of the unpaid contributions for Local 1, along with their reasonable attorney's fees and costs. In support of these proposed damages and fees, the Plans provide declarations from a knowledgeable employee; a declaration from their attorney, R. Richard Hopp; and summaries reflecting the amounts set forth in the declarations. *See* Pls.' Second Decl.; Pls.' App'x at 18-36; Pls.' Second Summary. Another court in this District has accepted similar declarations as adequate in a case brought by the Plans. *See Bricklayers & Trowel Trades Int'l Pension Fund v. Barron*, No. 18-cv-165 (CRC), 2018 WL 3213303, at *3 (D.D.C. June 29, 2018).

Both the First and Second Motions seek contributions that came due after the filing of the complaint. *See* Pls.' Br. at 4; Pls.' Second Decl. ¶ 2. The Plans' request for damages incurred post-filing is proper. Courts have entered judgments that include such damages where the complaint alleges, as it does here, that the plaintiff intends to seek them. *See* Compl. at 10;

---

[7] As noted, the Second Circuit has held that employers are not bound by liquidated-damages clauses in trust agreements to which they have not agreed. *Jaspan*, 80 F.3d at 40-42. District courts in that Circuit have accordingly declined to award interest and liquidated damages under Section 502(g)(2) based on the rates set forth in trust agreements that are not incorporated into the CBAs to which employers agreed. *See, e.g., O'Donnell v. CJ Prods., Inc.*, No. 15-cv-5470 (MKB) (JO), 2017 WL 1207885, at *4 (E.D.N.Y. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 1207532 (E.D.N.Y. Mar. 31, 2017). The Court notes that one prior decision in this District reached a contrary conclusion based on the Eleventh Circuit's decision in *Vertex*. *See Graphic Arts*, 2011 WL 5149124, at *2. This decision is of limited persuasive value, both because it was decided on default judgment (and thus without the benefit of briefing from both parties), and because it failed to acknowledge the Second Circuit's decision in *Jaspan*, which concluded that *Vertex*'s holding does not extend to liquidated-damages clauses.

*Boland v. Hetrick*, 277 F. Supp. 3d 112, 119 (D.D.C. 2017). In this case, it is notable that contributions for cover group 1-NY-64, raised for the first time in the Second Motion, were not mentioned in the complaint at all. Nonetheless, the cover groups appear to be subgroups of employees governed by the same CBA. Because the complaint put Kel-Tech on notice that the Plans would seek contributions that might come due under the CBA with Local 1 after the filing of the complaint (without limitation as to particular cover groups), the court will award damages related to cover group 1-NY-64.

Thus, relying on the declarations the Plans have submitted, and the entire record, *see Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 8 (D.D.C. 2009); *Amrine Drywall*, 239 F. Supp. 2d at 30, the Court finds that the Plans have proven with reasonable certainty that Kel-Tech owes the amounts summarized below in Table 3 (which total $28,748.81), as well as attorney's fees and costs of $4,189.[8] Taken together, these amounts total $32,937.81.

Therefore, the record supports a monetary judgment of $32,937.81.

[8] The Court finds that the attorney's fees and costs sought in this case are "reasonable," consistent with ERISA's provision allowing the Court to award such fees. 29 U.S.C. § 1132(g)(2)(D). In his declaration, Hopp outlines the individual tasks he performed, including drafting the complaint and the First Motion. Pls.' App'x at 21-22. He states that he has charged the Plans an hourly rate of $295.00 for 12.2 hours of work in connection with this case. *Id.* at 18-19. He further notes that his hourly rate is "below the usual and customary fee charged for this type of work" and "substantially below" the "rate established in the current *Laffey* matrix." *Id.* at 19. "Given that [Hopp] charged below-market rates, the Court finds the request [for attorney's fees] to be reasonable." *Bricklayers & Trowel Trades Int'l Pension Fund v. KAFKA Constr., Inc.*, 273 F. Supp. 3d 177, 182 (D.D.C. 2017); *see also Fanning v. Angus Corp.*, 939 F. Supp. 2d 23, 26 (D.D.C. 2013) (finding attorney's fees reasonable where "[t]he hourly rate sought by the Plaintiff, just $240 per hour, [was] well below the *Laffey* matrix rate for [an] attorney with over twenty years of experience"). The Court also finds that the other legal costs incurred (to file the complaint and serve process) were reasonable. Pls.' App'x at 19, 23-26.

*Table 3: Summary of Damages Supported by the Record*

| | | Local 1 | | | Local 84 |
|---|---|---|---|---|---|
| | | **1-NY-1** | **1-NY-64** | **1-NY-66** | **84-NY-19** |
| **Count I** | Unpaid Contributions | $11,460.80 | $1,076.04 | $16,211.97 | — |
| | Interest on Unpaid Contributions | — | — | — | — |
| | Liquidated Damages or Additional Interest on Unpaid Contributions | — | — | — | — |
| **Count II** | Interest on Late Contributions | — | — | — | — |
| | Liquidated Damages or Additional Interest on Late Contributions | — | — | — | — |

### D. Injunctive Relief

The final issue before the Court is whether the Plans are entitled to their requested injunctive relief: a permanent injunction requiring Kel-Tech to "submit accurate reports" and "pay all contributions" to the Plans "on or before the due date each month." ECF No. 10-3 at 2. ERISA permits a court to order "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E).

The Plans argue that their proposed injunction satisfies the traditional prerequisites for equitable relief. *See* Pls.' Br. at 7-13.[9] The Court will deny the Plans' request for a permanent injunction requiring Kel-Tech to submit accurate records and make timely contributions because

[9] The Court assumes, without deciding, that these prerequisites apply because the Plans make the same assumption. *See id.* at 8. In practice, many courts in this District appear not to have applied this standard. *See, e.g.*, *Bricklayers*, 2018 WL 3213303, at *4-5. And courts in the Second Circuit have been inconsistent in deciding "whether, and to what extent, to apply this relatively strict standard" in employer-contribution cases under ERISA in which plaintiffs have moved for default judgment. *Local Union No. 40 of Int'l Ass'n of Bridge v. Car-Win Constr.*, 88 F. Supp. 3d 250, 277 (S.D.N.Y. 2015).

they have not shown irreparable harm that cannot be compensated by money damages, one of these prerequisites. *See Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 694 (D.C. Cir. 2015) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)) (explaining requirements for permanent injunction); *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (holding that these requirements apply to default judgments). A permanent injunction may not "restrain an act the injurious consequences of which are merely trifling." *Weinberg v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) (quoting *Consol. Canal Co. v. Mesa Canal Co.*, 177 U.S. 296, 302 (1900)). And courts should be alert to the possibility that a monetary judgment might serve to alter the defendant's conduct as effectively as a permanent injunction would, rendering the latter unnecessary. *See SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385-86 (4th Cir. 2017). The Plans make three arguments for irreparable harm that cannot be addressed by money damages, but none is persuasive.

First, they cite cases highlighting the importance of a stable funding source for pension plans, given that such plans must continuously pay out benefits to beneficiaries. Pls.' Br. at 9-10 (citing *Cent. States, Se. & Sw. Areas Pension & Health & Welfare Funds v. McNamara Motor Express, Inc.*, 503 F. Supp. 96, 98-99 (W.D. Mich. 1980); *Cent. States, Se. & Sw. Areas Pension Fund v. Admiral Merchs. Motor Freight, Inc.*, 511 F. Supp. 38, 42 (D. Minn. 1980), *aff'd*, 642 F.2d 1122 (8th Cir. 1981)). In those cases, however, the court concluded either that "the actuarial soundness of the fund would be compromised" unless it received timely contributions, *McNamara*, 503 F. Supp. at 99 (quoting *Cent. States Se. & Sw. Areas Pension Fund v. Hitchings Trucking, Inc.*, 472 F. Supp. 1243, 1247 (E.D. Mich. 1979)), or that defendants' "precarious financial condition" left the plan unlikely to recover its losses, *Admiral Merchs.*, 511 F. Supp. at 43. That is consistent with the principle that even substantial "economic loss alone will rarely

constitute irreparable harm." *Naegele v. Albers*, 843 F. Supp. 2d 123, 129 (D.D.C. 2012). Rather, the plaintiff must show something more—for example, that "the potential harm would threaten the [plaintiff's] very existence." *Id.* (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). The Plans have not shown anything approaching such harm here. They have merely submitted a declaration reciting the unremarkable fact that owing an "unfunded obligation" to Kel-Tech employees "causes harm" to the Plans. Pls.' App'x at 6.

Second, the Plans argue that beneficiaries might experience "'emotional distress' caused by the knowledge that their employer was not paying the fringe benefit fund contributions that they had earned through their labor." Pls.' Br. at 10 (quoting *United Steelworkers of Am. v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987)). Given that this supposed harm is unsupported by any evidence whatsoever, or by the allegations in the complaint, the Court cannot find that it even exists, much less equates to irreparable harm.

Third, the Plans argue that Kel-Tech's "'persistent contempt' for the judicial process" justifies an injunction. *Id.* (quoting *Laborers Fringe Benefits Funds v. Nw. Concrete & Constr., Inc.*, 640 F.2d 1350, 1353 (6th Cir. 1981)). But in the case they cite, the defendant had proven unable or unwilling to pay a judgment in favor of another ERISA plan in a prior case. *See Nw. Concrete*, 640 F.2d at 1353 & n.4; *see also Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Black Diamond Contracting Grp., Inc.*, No. 8:17-cv-770 (JLS) (DFM), 2017 WL 6496434, at *7-8 (C.D. Cal. Dec. 18, 2017) (granting injunction where default judgment was previously entered against defendant); *Bd. of Trs. of Bay Area Roofers & Welfare Tr. Fund v. Westech Roofing*, No. 3:12-cv-5655 (JCS), 2014 WL 4383062, at *4 (N.D. Cal. Sept. 4, 2014) (finding irreparable harm given defendant's "long history of non-compliance in the face of multiple court orders"). Here, by contrast, the supposedly irreparable harm arises purely from the fact that Kel-Tech

"continues to ignore this federal lawsuit." Pls.' Br. at 11. But under this theory, irreparable harm would be satisfied in any case involving a default judgment.

Reviewing the record as a whole, the Court concludes that there is simply no basis to find irreparable harm that cannot be adequately addressed by money damages. While Kel-Tech has been delinquent in making its payments and (on at least some occasions) submitting records to the Plans, there is nothing (apart from a few conclusory allegations in the Plans' complaint) to suggest that a monetary judgment would be an inadequate remedy. The Plans have not shown that Kel-Tech's conduct has significantly hampered, or will hamper, their ability to assess and collect the money they are owed. In fact, during the pendency of this lawsuit—before the Court's ruling on the instant motions—Kel-Tech has apparently made some of the payments at issue in the complaint, and the Plans have assessed additional contributions they allege they are owed. *See* Pls.' App'x at 4; Pls.' Second Decl. ¶ 2.

It is also notable that the Plans have not sought an audit of Kel-Tech's records. Such audits are often requested in employer-contribution cases and, in some circumstances, are more likely than the injunction requested in this case to provide relief that cannot be had through money damages alone. *See, e.g.*, *Fanning*, 2018 WL 2389727, at *4-5; *Trs. of N.Y.C. Dist. Council of Carpenters Pension, Welfare, Annuity, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Funds v. Access Sols. Grp., LLC*, No. 17-cv-4679, 2017 WL 5256765, at *3 (S.D.N.Y. Nov. 13, 2017) ("Courts routinely grant requests for an audit of books and records to determine what the audited entity owes under the collective bargaining agreement."); *Bricklayers Ins. & Welfare Fund v. Everest Masonry Constr.*, No. 16-cv-1622 (NG) (SMG), 2017 WL 4179853, at *5 (E.D.N.Y. June 26, 2017) (finding irreparable harm because, absent audit, "the full extent of [defendant's] delinquent contributions remains unknown"), *report and*

*recommendation adopted*, 2017 WL 4217116 (E.D.N.Y. Sept. 20, 2017); *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 150 (D.D.C. 2016) (granting injunction where defendant refused access to its books "despite repeated requests"); *Nat'l Elec. Benefit Fund v. AC-DC Elec., Inc.*, No. 8:11-cv-893 (DKC), 2011 WL 6153022, at *3 (D. Md. Dec. 9, 2011) (noting that courts have generally found irreparable harm when presented with "a defendant's refusal to permit an audit and subsequent unwillingness to engage in resulting court proceedings").

Thus, the record before the Court does not support the Plans' request for a permanent injunction that would require Kel-Tech to submit accurate records and make timely contributions.

## IV. Further Proceedings

The Court will give the Plans an opportunity to address the deficiencies identified in this Opinion related to liability, damages, and injunctive relief. The Court leaves it to the Plans how best to do so: whether by filing supplemental briefing and declarations, a revised motion, and/or an amended complaint. If the Plans do file an amended complaint, they must either serve it on Kel-Tech or explain why service is not required. Moreover, the Plans must make any and all further submissions by August 31, 2018. In the meantime, the Court will hold its decision on the Second Motion in abeyance. If the Plans do not make any further submission by August 31, the Court will grant the Second Motion in part, deny it in part, and enter a default judgment consistent with this Memorandum Opinion.

## V. Conclusion and Order

For the reasons stated above, the Court hereby **ORDERS** that the Plans' First Motion (ECF No. 9) is **DENIED AS MOOT**. The Court **FURTHER ORDERS** that the Plans shall file

any supplemental briefing and declarations, revised motion for default judgment, or amended complaint by **August 31, 2018**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 3, 2018